IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RASHEL HAMPL, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> § <br> § <br> § <br> § <br> TRIUMPH ENGINE CONTROL § <br> SYSTEMS, LLC; and TRIUMPH § <br> GROUP, INC., § <br> § <br> Defendants. § | | Civil Action <br> No. 1:25-cv-346 <br> <br> **COMPLAINT** <br> <br> Wrongful death, negligence, product liability (28 U.S.C. §1332 (diversity jurisdiction) <br> <br> <br> **DEMAND FOR JURY TRIAL** |

COMES NOW Rashel Hampl, and brings this wrongful death action for the death of her husband, Thomas Hampl, in a December 10, 2015 helicopter crash, against Triumph Engine Control Systems, LLC, and Triumph Group, Inc., and for cause of action would show unto the Court the following:

**The Parties**

1. Plaintiff Rashel Hampl is an individual and citizen and resident of the State of California and brings here a wrongful death claim against defendants for the death of her husband, Thomas Hampl, in a December 10, 2015 helicopter crash ("the crash").

2. Defendant Triumph Engine Control Systems, LLC ("Triumph Engine") is a Delaware Limited Liability Company with its principal place of business at 1 Charter Oak Blvd, West Hartford, CT 06133, with its registered agent for service of process in Connecticut, Corporation Service Company, Goodwin Square, 225 Asylum St, 20th Floor, Hartford, CT 06103, and with its registered

agent for service of process in Delaware, Corporation Service Company, 251 Little Falls Dr, Wilmington, DE 19808.

3. Triumph Engine is in the business of manufacturing Full Authority Digital Engine Control (FADEC) systems and other aircraft fuel pump, fuel system, and fuel metering systems, components, and controls, to aircraft engine manufacturers, as an incorporated component in such aircraft engine manufacturer's engine design.

4. A substantial portion of the sales, revenues, and profits Triumph Engine generates and has generated, vitally important to Triumph Engine's business and ability to stay in business, is and has been through continuous and systematic sales of such engine components to helicopter engine manufacturer Rolls Royce Corporation ("Rolls Royce") for incorporation in its model 250 engines for incorporation in new Bell helicopters that were sold and delivered to their first end users by Texas-based and headquartered helicopter manufacturer, Bell Helicopter Textron Inc., formerly known as Bell Helicopter Textron Inc. ("Bell Helicopter" and sometimes "Bell"), in the State of Texas, with Texas being an intentionally and purposefully cultivated market for Triumph Engine and its FADEC systems, fuel pumps and controls, and fuel metering systems.

5. Bell Helicopter manufactured and sold the Bell 407 model helicopter, registered as N408FC, serial number 53450, the crash of which on December 10, 2015, and resulting death of Thomas Hampl, is the subject of this lawsuit ("the subject helicopter").

6. Triumph Engine's benefit of continuous and systematic ultimate sales and deliveries of its products in the State of Texas have been, and continue to be essential to its business, with Triumph benefiting from Texas laws and its ability to generate substantial profits resulting from the distribution of its products through the State of Texas.

7.	Certain Rolls Royce 250 model helicopter engines, including the Rolls Royce model 250-C47B helicopter engine, were designed include as part of the engine a FADEC system designed, manufactured, and sold by Triumph Engine.  FADEC is a computer system that automates and controls engine power throughout helicopter flight with computer automated fuel flow management and control.  Numerous Triumph Engine FADECs were distributed into Texas as an integral component of Rolls Royce model 250 engines sold and delivered in the State of Texas with and as part of new Bell helicopters by Bell Helicopter.

8.	Triumph Engine also is and has been a Rolls Royce Approved Supplier for the 250 model engine as part of the Rolls Royce FIRST Network providing maintenance and overhaul support services, aftermarket sales support, and emergency support services to minimize downtime with respect to FADECs, fuel pumps, fuel control systems, and fuel metering systems, for owners/operators of helicopters equipped with Rolls Royce 250 model engines, including substantial numbers of customers in Texas, a carefully and intentionally cultivated market for Rolls Royce 250 model engines.

9.	Triumph Engine additionally partners with Texas corporation, Dallas Airmotive, Inc., doing business as StandardAero, and also known as, or formerly known as, Standard Aero Ltd. ("StandardAero/Dallas Airmotive"), to provide MRO services on hydromechanical units (HMUs) and fuel pumps it has manufactured and sold for Rolls Royce 250 model engines, including substantial numbers of which were sold and delivered to their first end users in Texas by Bell Helicopter.  Triumph Engine's partnership with Texas corporation StandardAero/Dallas Airmotive includes selling to the Texas corporation StandardAero/Dallas Airmotive replacement products, upgrades, components, and parts, and contracting with the Texas corporation StandardAero/Dallas

Airmotive to provide certain maintenance, repair, overhaul, upgrade, and diagnostic services in-house.

10. Triumph Engine additionally has long sold and continues to sell FADECS and fuel system components for Rolls Royce 250 model engines sold to MD Helicopters for incorporation into helicopter models manufactured and sold by MD Helicopters. Triumph Engine has also for decades sold gearboxes to MD Helicopters for incorporation into helicopter models manufactured and sold by MD Helicopters, and recently promoted a new long-term agreement to sell gearboxes to MD Helicopters. Such helicopters manufactured by MD Helicopters with Triumph Engine products/systems are then sold in substantial numbers to Texas customers, including a significant multi-year government contract for MD Helicopters in the State of Texas. The Texas market is further cultivated by Triumph Engine, through its partnership with MD Helicopters, by the creation this year of an Authorized Service Center (ASC) partnership with Thoroughbred Aviation in Georgetown, Texas, which was a purposeful cultivation of the Texas market, as described/promoted by MD Helicopters: "By adding an ASC in Texas, we are better serving our customers with our trusted partners at Thoroughbred Aviation and expanding our network into a region that has one of the highest concentrations of MDs in the country."

*2014 sale, delivery, and distribution of the remanufactured subject FADEC into Texas*

11. Triumph Engine is and was a Rolls Royce FIRST Network participant with respect to FADEC and FADEC component service, replacements, and upgrades, and Rolls Royce engine rental network participant with respect to FADEC utilization in rental engines, and also including service, replacements, and upgrades.

12. In or around 2013-2014, Triumph Engine undertook to repair, upgrade, and replace components in, Triumph Engine FADEC Serial Number JG9ALK0615 ("the subject FADEC"). The

subject FADEC degrade light had illuminated in service and when sent to Triumph Engine, failed diagnostic testing and was found to have a J1 connector that was bent and missing pins. Triumph Engine, performed repairs and component replacements resulting in the subject FADEC becoming an updated EMC-35R, and changing its Triumph Engine part number from 113500-6B2-5202 to 115220-2A5-24. Triumph Engine's transformation of the subject FADEC, essentially a re-manufacture to the updated EMC-35R, Triumph Engine part number 115220-2A5-24, Rolls Royce part number M250-10696, included the power board and unit being updated to part number 2A5.

13. Upon completion of its work on the subject FADEC, Triumph Engine sold and distributed the repaired and remanufactured FADEC (also described as an "ECU"), now equipped with a 2A5 power board and unit, into Texas by shipping it to Rolls-Royce's distributor Aviall in Texas in November 2014, as stated by Triumph Engine manager, Justin Wolfanger in a January 9, 2023 declaration.

14. After its distribution into Texas, the remanufactured subject FADEC, now equipped with a 2A5 power board and unit, was installed in Rolls Royce model 250-C47B, Serial Number 847778 ("the subject engine") in 2015, an engine under the shared ownership and control of Rolls Royce and the Rolls Royce engine rental network for use in the Rolls Royce engine rental network, and which engine Rolls Royce and the Rolls Royce engine rental network later rented out to Rogers Helicopters and the SkyLife air medical transport operation for installation in the subject helicopter.

15. The subject FADEC, now equipped with a 2A5 power board and unit, and shipped by Triumph Engine to parts distributor Aviall, Inc. in Texas, was dangerously defective as designed, manufactured, assembled, re-manufactured, repaired, and upgraded by Triumph Engines.

16. After being incorporated into the subject engine following distribution and delivery of the remanufactured subject FADEC, now with a 2A5 power board, into Texas, and subsequently

incorporated into the subject helicopter, the dangerously defective subject FADEC malfunctioned during flight on December 10, 2015, resulting in power board components failing, including the Q408 transistor, and the FADEC failing to properly control engine power and fuel flow, which caused and resulted in the December 10, 2015 helicopter crash in which plaintiff's husband, Thomas Hampl, was killed.

17. Accordingly, plaintiff's claims against Triumph Engine arise out of and/or relate to Triumph Engine's conduct and activities in Texas and Triumph Engine is subject to specific personal jurisdiction as to plaintiff's claims.

18. Defendant Triumph Group, Inc. ("Triumph Group") is a Delaware corporation, registered in the State of Texas, which conducts continual and substantial business activities in the State of Texas, with its registered agent for service of process in Travis County, Texas, specifically, Corporation Service Company, 211 E 7th St, Suite 620, Austin, Texas 78701.

19. Additionally, the jurisdictional contacts of Triumph Engine with the State of Texas are shared with Triumph Group, and *vice versa*.

20. Defendants Triumph Group and Triumph Engine are hereinafter collectively referred to as "Triumph."

**Subject Matter Jurisdiction and Venue**

21. This Court has diversity jurisdiction under 28 U.S.C. §1332 in that plaintiff is a citizen of the State of California, and neither defendant is a California citizen, and the amount in controversy exceeds $75,000.

22. Venue is proper in the Western District of Texas under 28 U.S.C. §1332(b)(3) in that neither of the defendants reside in Texas, the negligence and tortious conduct of the defendants took place outside of Texas, and the helicopter crash occurred outside of Texas, but the defendants are

subject to personal jurisdiction in this district, and Triumph Group's registered agent for service of process is specifically in Travis County, Texas, making the Austin Division appropriate for this action.

**Notice of Related Action**

23.     A related action asserting the wrongful death claims of Thomas Hampl's children, Kilian Hampl, and Liam Hampl, against Bell Helicopter, Rolls Royce, Triumph Engine, Triumph Group, StandardAero/Dallas Airmotive, and Standard Aero (San Antonio) Inc., is currently pending in the Western District of Texas, San Antonio Division, and is styled *Hampl, et al. v. Dallas Airmotive, Inc., et al.*, W.D. Tex. No. 5:24-cv-00830-FB.  Plaintiff Rashel Hampl is not a plaintiff in her individual capacity on her wrongful death claims in the related action (though she is in a conservator/guardian and next friend capacity for plaintiff Kilian Hampl, and in a guardian and next friend capacity for plaintiff Liam Hampl, in their individual wrongful death claims in the related action).

**Background – the helicopter crash**

24.     The Triumph FADECs, were originally developed by Chandler Evens and selected by Rolls Royce for its 250-C47B engines, and sold by Bell Helicopters as an integral part of its Bell 407 helicopters and their computerized automation features.  The Chandler Evans FADEC product line was later acquired by Goodrich Pump & Engine Control Systems, and in or around 2013 acquired by Triumph.

25.     The Triumph FADECs were problematically designed and manufactured, and frequently suffered various failures, many of which were dangerous when they occurred in flight with the high potential of causing a helicopter crash, and several helicopter crashes did result.

26. Upon information and belief, a component commonly found in a failed or damaged condition following FADEC malfunction, known by Triumph and its predecessors, was the Q408 transistor on the FADEC's power board.

27. Triumph long knew of the need for a more robustly built FADEC system less prone to frequent component and power failures in Triumph FADECs, and they further knew of the need for a FADEC to have a fully redundant back up system so that component and power failures would not result in deaths/injuries.

28. Rather than making the needed fixes to Triumph's FADECs, they instead only made a half-hearted effort to protect against some component failures by adding a reversionary channel that could sometimes keep the FADEC from malfunctioning in the event of certain component failures. On March 2, 2006, promotional materials announced the updated Triumph FADEC with a reversionary channel for Rolls Royce 250-C47B engines in Bell 407 helicopters, designated as EMC-35R, and claimed that a "detailed and extensive engineering test program" demonstrated the updated FADEC with the reversionary channel would sometimes help prevent a FADEC malfunction and resulting crash when a component failed.

29. The reversionary channel did not provide protection against FADEC malfunction and helicopter crash with respect to most component failures, including those that had plagued the Triumph FADECs. Notably, it did not provide any such protection when certain component or power failures occurred, including those which resulted in failed/burned/damaged Q408 transistors on the power board, and also resulted in loss of FADEC automated fuel flow, management, and engine control, and resulting loss of engine power.

30. Triumph knew of these problems and the need for a more robustly built FADEC, less susceptible to component failures, a fix to the frequent FADEC malfunctions, including those

evidenced by Q408 transistors that are readily recognized on visual inspection as damaged/burned/failed, and a true redundancy/back-up system, such as a dual channel FADEC, to prevent FADEC component and power failures from resulting in helicopter crashes and deaths/injuries. Yet Triumph continued to sell and distribute Triumph FADEC systems without addressing the problems and fixing the product.

31. Rolls Royce eventually quietly worked with Bell Helicopter on development of a new dual channel FADEC that would have the necessary redundancy and be much safer for a new derivative of its 250-C47 engines – the E/4, which Bell Helicopter would eventually sell in its latest Bell 407 helicopters, as a sort of quiet industry replacement and phasing out of a very dangerous and defective Triumph FADEC system, but they also continued to rent out and service engines with the known dangerously defective Triumph FADEC systems, and Triumph itself never fixed the defects and safety issues in its FADEC systems.

32. As addressed more fully above, in or around 2013-14, Triumph undertook to repair and upgrade the subject FADEC to a new model and part number, the subject FADEC, serial number JG9ALK0615. Triumph remanufactured the subject FADEC to a new model and part number, with an updated 2A5 power board. However, Triumph was negligent in the work it performed on the subject FADEC, including negligently installing components on the power board such that they were in a dangerously defective condition and prone to malfunctioning and failing in a way that could cause sudden and dangerous loss of helicopter engine power during flight.

33. At the time Triumph negligently worked on, remanufactured, upgraded, and sold the subject FADEC, Triumph also knew its FADECS, including the subject FADEC, were dangerously defective as designed and constructed, subject to frequent component and power failures. Triumph further knew, or should have known, that its negligently installed power board components as part

of updating the subject FADEC's power board to 2A5, made the FADEC even more prone to component and power failure, and that such component and power failures were responsible for several dangerous in flight FADEC failures and helicopter crashes, and lacked appropriate redundancy and safeguard features; and further knew that, despite updating the power board to 2A5, Triumph had done nothing to improve or fix the susceptibility of Triumph FADECs to component and power failures and that it was knowingly distributing and selling the subject FADEC an unacceptably high probability of failure, and extraordinarily and unacceptably dangerous for use in any helicopter.

34.     On December 10, 2015, plaintiff's husband, Thomas Hampl, age 49 and a professional pilot who had not been warned by Triumph that the subject FADEC, was defective and unreasonably dangerous due to the dangerously defective design and construction of the subject FADEC, and the negligent post-sale work and component installations Triumph had performed on the subject FADEC in 2013-14 which rendered the FADEC even more dangerous and likely to malfunction and fail in a manner that could result in a helicopter crash, was piloting the subject helicopter near McFarland, California, transporting a patient, with two medical crew members on board, when the FADEC malfunctioned, as a result of its dangerously defective condition and Triumph's negligent post-sale work, in a manner which caused sudden and dangerous loss of helicopter engine power, and the helicopter crashing, killing Hampl, the patient, and the medical crew.

35.     Plaintiff now brings wrongful death claims against Triumph Engine and Triumph Group under Texas' wrongful death law, or alternatively, California's wrongful death law if deemed applicable, for all damages available to her under the applicable law.

## FIRST CLAIM

### Negligence

36. Plaintiff realleges and incorporate by reference paragraphs 1 through 35 above.

37. Defendants were negligent in the design, manufacture, marketing, support of the subject FADEC system, and in their post-sale work on, remanufacture of, upgrade to, the subject FADEC, resulting in the subject FADEC being dangerously and unacceptably prone to component and power failures that were highly likely to occur during helicopter flight and result in sudden loss of engine power and a crash, and were further negligent in failing to adequately address the FADEC's problems or to make it more robust or less prone to failure, or to add redundant or safeguarding systems.

38. Defendants were further negligent in failing to warn of the danger in the subject FADEC and after working on/remanufacturing it in a condition where Triumph knew it was dangerously defective with an unreasonable risk and likelihood of causing a helicopter crash and resulting deaths or injuries.

39. Triumph's negligence was a proximate and/or producing cause of the crash that killed plaintiff's husband, Thomas Hampl, and her resulting damages.

## SECOND CLAIM

### Strict Liability
### (Design, manufacturing, and marketing defect)

40. Plaintiff realleges and incorporate by reference paragraphs 1 through 39 above.

41. The design of the subject FADEC, designed, manufactured and remanufactured, and sold/delivered by Triumph, and installed in the subject engine and rented/leased to the owner/operator of the subject helicopter, for installation and use in the subject helicopter, was dangerously defective and unsafe. Plaintiff would show that there was an economically and

technologically feasible safer alternative design, and the defective FADEC design was a proximate and/or producing cause of the crash that killed plaintiff's husband, Thomas Hampl, and her resulting damages.

42. The subject FADEC was dangerously defective as remanufactured by Triumph. The updated 2A5 powerboard had negligently installed components and work performed on it by Triumph, and was in an improper condition such that it prone to malfunction, which would result in dangerous FADEC failure with an unreasonably high probability and danger of a helicopter crash and resulting deaths or injuries.

43. The defectively designed, manufactured, and remanufactured FADEC was a proximate and/or producing cause of the crash that killed plaintiff's husband, Thomas Hampl, and her resulting damages.

44. Triumph's marketing of its FADEC system was defective. Plaintiff would show that Triumph failed to provide the pilot and operator of the subject helicopter with adequate information to safely operate the helicopter.

45. Triumph's marketing defect was a proximate and/or producing cause of the crash that killed plaintiff Rashel's husband, Thomas Hampl, and plaintiff's resulting damages.

**Damages**

46. Plaintiff seeks all wrongful death damages recoverable under Texas law, or alternatively under California law if deemed applicable, against defendants for the death of her husband, Thomas Hampl, including all such damages sustained in the past and reasonably expected in the future; and specifically including pecuniary losses, loss of care, maintenance, support, services, advice, counsel, camaraderie, and contributions, funeral and burial expenses, loss of love, comfort, companionship and society, and mental anguish.

47. Plaintiff seeks monetary relief against Triumph Engine and Triumph Group over $1,000,000 and such other relief to which plaintiff is entitled.

48. Plaintiff claims interest at the maximum legal rate on damages suffered as a result of the defendants' conduct.

WHEREFORE, Plaintiff respectfully prays that she have and recover all judgment of and from the defendants, jointly and severally, for actual damages, with all costs of court, pre-judgment interest at the maximum legal rate, post-judgment interest at the maximum legal rate, and all other relief, both general and special, at law or in equity, to which plaintiff may show she is justly entitled.

**JURY DEMAND**

Plaintiff respectfully requests a jury trial.

Dated: March 7, 2025

Respectfully submitted,

*s/ Andres C. Pereira*
Andres C. Pereira
Texas Bar No. 00794440
Mark Pierce
Texas Bar No. 15995500
DJC Law PLLC
1012 W. Anderson Lane
Austin, TX 78757
Telephone: (512) 220-1800
Facsimile: (512) 220-1801
apereira@teamjustice.com
mark@teamjustice.com

Matthew Clarke (pro hac vice pending)
KRUTCH LINDELL BINGHAM JONES, PS
5 Centerpointe Dr., Suite 400
Portland, OR 97035
Telephone: (503) 210-1987
mkc@krutchlindell.com